J. B. MORTIMER, Trustee, *v.* JOHN A. McKAY.

**Appropriation of Payments — When Note and Deed of Trust Extinguished.**

When a note is given for a debt thereafter to be incurred for advances and a deed of trust is given to secure same and supplies are afterward advanced and charged on the books of the grantee to a greater amount than the face of the note so secured and charged on the books of ·the grantee, and the grantor afterward ships cotton to the grantee without directions as to how the proceeds are to be appropriated and the grantor is given credit for the proceeds on the account on the books of the grantee this will be held to be an appropriation of the payment to the first items of the account and an extinguishment of the mortgage debt to that extent.[1]

**Same — On Open Account.**

Where a credit upon an open account is not applied by either party the law appropriates it to the oldest items.

Replevin by appellant against appellee to recover possession of three bales of cotton. From verdict and judgment for defendant plaintiff appeals.

1.

The debtor has the right at the time he makes a payment to appropriate it to whichever of several demands held against him by the creditor he pleases; if he fail to exercise this right, then the creditor can appropriate the payment. Crisler *v.* McCoy, 33 Miss. 445.

Where several promissory notes being for several installments of one debt are given on the same day, but falling due at different times, partial payments thereon, unappropriated, by the parties, will be applied exclusively to the note first falling due, until it is satisfied, and then to the next, etc. Miller *v.* Leflore, 32 Miss. 634.

Partial payments on an open account, if unappropriated by the parties, will be applied to the items drawing interest in the order in which they fall due. Scott *v.* Cleveland, 33 Miss. 447.

Partial payments are applied to a debt overdue in preference to one not due when they are made. Effinger *v.* Henderson, 33 Miss. 449.

If a party be indebted by mortgage and also by simple contract debts to the same creditor, and make a payment and omit to apply it specifically to one of the debts, the law will make the application in the way most beneficial to the debtor, viz.: to the mortgage. And so if the mortgagor sell the mortgaged property, and the purchaser pay the purchase money to the mortgagee, who has another debt against the mortgagor, the law will apply the payments made by the purchaser in exoneration of the mortgaged property. Poindexter *v.* La Roche, 7 S. & M. 699.

A party indebted on several accounts may, on making a payment, direct its appropriation. Champenois *v.* Fort, 45 Miss. 355.

T. H. Lake, a commission merchant, agreed to furnish John A. Cameron money and supplies for the year 1876 to the amount of $400, and in February, 1876, John A. Cameron and his wife executed their joint note to Lake for $400 for advances thereafter to be made. At the same time they executed a deed of trust to secure the note on some land that belonged to Mrs. Cameron and the crops to grow thereon for that year.

Lake afterward formed a partnership with one Marshall and the firm name of Lake & Marshall and that firm furnished to Cameron money and groceries to the amount of $750, all of it being charged on the books of Lake & Marshall, but with the understanding between them that Lake was to own the note and account. In Octo-

In this State, the rule of the civil law which, in the absence of any appropriation by either debtor or creditor, appropriates payments most beneficially to the debtor obtains. McLaughlin v. Green, 48 Miss. 175.

Where a payment upon an open account is not applied by either party, the law appropriates it to the oldest items of the account, even though such items, if not so paid, would have been barred by limitation. Fletcher v. Gillan, 62 Miss. 8.

The rule that a debtor making a voluntary payment may direct which of several debts the credit may be applied to, and if he gives no direction the creditor may make the application, and if both omit it the law will apply it, has no application where payment is enforced by process of law or in invitum. Wooten v. Buchanan, 49 Miss. 386.

Where there are several notes secured by a vendor's lien and all are due the money arising from the foreclosure should be applied ratably to the several notes, and this, although there has been a judgment at law upon one of them. Wooten v. Buchanan, 49 Miss. 386.

The law appropriates payments most beneficially to the debtor. If a mortgagor delivers the incumbered property to the mortgagee without direction the law will apply the same to the liquidation of the mortgage debt, and not to an unsecured claim. Neal v. Allison, 50 Miss. 175; Windsor v. Kennedy, 52 Miss. 164; Ogden v. Harrison, 56 Miss. 743.

And so, where a note secured by a crop mortgage is given for future advances, though the amount of the note is placed to the credit of the debtor on account, it cannot be claimed by the creditor, in order to control the application of payments made by the delivery of the mortgaged property, that the money placed to the credit of the debtor thereby became his, and, being all drawn out by him, the cotton afterward delivered was intended to be applied to the advances made after the amount credited to the debtor was drawn out, leaving the note and mortgage unpaid. Windsor v. Kennedy, 52 Miss. 164.

The rule that payments are to be applied most beneficially to the debtor cannot be invoked by a purchaser of mortgaged property in order to secure its release, where a subsequent partial payment is made by the mortgagor (not of property covered by the lien), which payment is, by consent, applied by the mortgagee to other indebtedness. Hiller v. Levy, 66 Miss. 30, 5 So. 226.

ber, 1876, Cameron shipped eight bales of cotton to Lake & Marshall without directions as to how the proceeds should be applied. The cotton was sold by Lake & Marshall and the proceeds, amounting to $351.67, was placed to the credit of Cameron on the books of Lake & Marshall and appeared as a credit on the account on the books. Cameron afterward sent money which, added to this amount, was sufficient to pay the note and interest on it, with directions that it be credited on the note which was done. After this the Camerons gave another deed of trust on the crops in which appellee McKay was trustee. He took possession of the three bales of cotton in controversy when appellant, Mortimer, as trustee in the deed of trust to secure Lake & Marshall, sued out this writ of replevin for the cotton, claiming under that deed of trust. Lake and Marshall testified that the proceeds of the cotton just about paid the account and was not applied to the payment of the note but to the account with the consent of John A. Cameron. This was denied by Cameron.

APPEALED from Circuit Court, Lauderdale county, S. H. TERRAL, Judge.

Affirmed, November 12, 1883.

*Attorneys for appellant, Dial & Witherspoon.*

*Attorneys for appellee, John W. Fewell.*

Brief of Dial & Witherspoon:

* * * Defendant urges three objections against plaintiff's title: First, that the trust deed which is the basis of plaintiff's claim was satisfied in full prior to the institution of this suit. Second, that said trust deed was null and void because no trustee was named in it at the time of its delivery, and, third, that said trust deed does not cover the cotton in dispute. The first of these objections was sustained by the court below in refusing to give sixth, seventh, tenth, eleventh, twelfth, thirteenth, fourteenth, and fifteenth instructions asked by plaintiff, and in giving the third, fifth, sixth, seventh instructions asked by defendant, and the action of the court in refusing to give the former and in giving the latter constitute the first assignment of error.

On the 1st day of October, 1876, J. A. Cameron shipped to
Lake &· Marshall, of Mobile, Ala., eight bales of cotton and at
that time he owed Lake & Marshall a debt which the proceeds of
said cotton was just sufficient to pay and the appropriation of
said proceeds to the payment of their claim will leave the note
and trust deed in dispute unsatisfied, so that the real question
here is whether said proceeds must be applied to the claim of
Lake & Marshall or to the note and trust deed of Lake.   *   *   *

In refusing to give plaintiff's sixth instruction, which means
that if Cameron owed Lake & Marshall a debt and paid them,
they cannot receive said payment because at the time Cameron
also owed a debt to T. H. Lake, we think there is error.   It is true
that Mr. Lake held a trust deed on the cotton with which Mr.
Cameron sought to make the payment to Lake & Marshall and
possibly this might have enabled Mr. Lake, in the first, to insist
on an application of the eight bales of cotton to his note, but surely
when Cameron shipped the cotton to Lake & Marshall and all
parties agreed to apply it to the firm debt there is no law which
prevents such application.   The refusal of the court to grant the
sixth instruction asked by plaintiff and all the instructions refused
or given with regard to the appropriation of payments indicate
a misconception of the case of Ogden v. Harrison, 56 Miss. 743.
When cotton embraced in a trust deed is delivered to the grantee
the law does not make the application of the payment, but accord-
ing to this decision the mortgage itself is an express agreement,
as to the appropriation and the parties can change that agreement,
as any other contract, at their will.   But the case of Ogden v.
Harrison can have no application in this cause for the reason that
the mortgaged property was never delivered to T. H. Lake, the
beneficiary, but to a firm of which he was a member.   But even
if Cameron had owed both debts to Lake and had delivered the
cotton to him, an express agreement could have changed the ap-
plication agreed on the trust deed.   In refusing to give plaintiff's
seventh instruction, the error is equally manifest.   A shipment
of the eight bales to Lake & Marshall was an express agreement
on Cameron's part that the proceeds should be applied to the pay-
ment of the firm debt.

The tenth instruction asked by plaintiff seeks to justify the ap-
plication of the proceeds of the eight bales to the firm debt be-
cause at the time of its reception by Lake & Marshall they did

not know that said cotton was embraced in Lake's trust deed.
\* \* \*

In refusing to grant the twelfth instruction asked by plaintiff the court below assumes that if Cameron owed both debts to T. H. Lake and shipped him the cotton embraced in his trust deed, then the law applies to proceeds of the mortgaged cotton to the mortgage debt absolutely, and that an agreement of the parties to the trust deed could not change that application. This instruction as asked was correct and should have been given.

The thirteenth instruction asked by plaintiff justifies the application of the eight bales of cotton to open account debt because at the time of shipment it was due and bearing interest while the note and trust deed did not fall due until nearly two months later. In the case of Ogden *v.* Harrison, both the unsecured debt and also the mortgaged debt to which latter this court decided to apply the proceeds of the mortgaged property, were due, and in that particular that case was different from the case at bar. In this case if Lake had received the cotton and had owned both claims it would have been his duty to apply the proceeds to the debt first due. The very time of payment is conclusive evidence of the debtor's intention to pay the debt that is due and the only one on which he could be sued while Lake could not be required to accept payment before maturity and tender before then would not be good. Bacon *v.* Brown, 1 Bibb, 334, 4 Am. Dec. 640 Miller *v.* LeFlore, 32 Miss. 634; Scott *v.* Cleveland, 33 Miss. 447; Effinger *v.* Henderson, 33 Miss. 449.

There being some little evidence to show that no application at all was made by the parties, while the great weight of the testimony showed such application, yet in case the jury should believe that there was no such application we asked the fourteenth instruction to the effect that in that case the law made the application to the debt overdue, and bearing interest, and it was error to refuse it. \* \* \*

It is not only to the debtor's interest to pay a debt due rather than one not due, but in this case such payment was calculated to benefit the debtor in the accomplishment of a special object. 14 Am. Dec. 691, 12 Serg. & R. 301.

The principle of law laid down in this case is stated in the fifteenth instruction asked by plaintiff and the same should have been granted.

The third instruction asked by defendant and given by the court is clearly erroneous in three respects: First. It assumes as

true that the eight bales of cotton were shipped to Lake while there is not a syllable of evidence to that effect. * * * Second. If the cotton had been shipped to Lake, still the law does not make the application but the agreement in the trust deed would direct and the jury should have been left free to decide whether that agreement had been changed by the parties as the evidence abundantly shows that it had. Third. This instruction goes on to reduce the whole case to a simple example of arithmetical addition and tells the jury to find for the defendant if the sum of $354.95 and $45.05 is equal to $400, the face of the note. * * *

The fifth instruction given to the defendant is erroneous in three respects: First. The court tells the jury that the account dated November 28, 1876, does not show any application of the proceeds of the eight bales. An inspection of the account shows that it consists of two parts. First, of Cameron's account with T. H. Lake running from February 29, 1876, to June 28th following and making Lake's claim $632.58. The first part closes with the statement " Bal. due T. H. Lake Nov. 28th, 1876, $632.58," and there is no credit of anything on this part of the account, and of necessity it must be credited on the other part. According to Mr. Cameron's and Mr. Lake's testimony and also from the face of the papers themselves, on this 28th day of November, 1876, T. H. Lake renders Cameron this statement showing that he, Lake, claims this balance nearly two months after the shipment of the eight bales and as a result of the claim Cameron procured the certificate above discussed. The other part of this statement is an account of J. A. Cameron with Lake & Marshall, running from September 11, 1876, to November 28th following and aggregating $118.44, for which we infer that T. H. Lake and W. T. Marshall formed their partnership sometime between June 28, 1876, and September 11th following, and that between those dates no supplies were furnished Cameron. This second part of the statement contains in addition to the account of Lake & Marshall, the item " Nov. 28th, am't. of account with T. H. Lake $632.58," making in all $751.02, and evidently the two accounts are blended only for the purpose of convenience. * * *

The sixth instruction is equally erroneous as the fifth, being erroneous as to the facts appearing on the face of the account. This statement is an itemized statement of J. A. Cameron's account, showing who the account is in favor of and consists of the

very same items that make up his accounts with T. H. Lake and with Lake & Marshall, as shown in the other statement, dated November 28, 1876. * * *

The seventh instruction is erroneous in assuming as a fact what was never proven, that Cameron owed Lake two debts while the proof showed that he owed Lake a note, an open account, and also an open account to Lake & Marshall. Second. That several payments were made to Lake, while the fact is that there was only one payment, the eight bales, and that was made to Lake & Marshall. Third. "In this case it (the eight bales) is to be applied to the mortgage debt and upon payment the deed becomes void." This latter sentence takes the whole case out of the hands of the jury. It is a plain statement by the court that our trust deed is void. Surely this is erroneous. * * *

Brief of John W. Fewell:

* * * If the deed of trust of Lake was valid it was satisfied. The cotton shipped and sold ought to have been applied to the deed of trust part of the debt. As neither party seems to have made any application of it, the law applies it to the most onerous debt — the debt secured by the deed of trust, and when Cameron remitted the small balance remaining due, and ordered the same to be applied to the deed of trust debt, that operated as a satisfaction of the deed of trust.

The court will please note the account made out by Lake *ante litem motem.* After suit brought, the figures undergo some rather curious changes, and Lake, and Lake & Marshall get so entangled that there is danger of losing their identity. * * *

It will hardly be contended that Cameron had a right to do as he pleased with the tenant's crop. It was pledged to Chandler who advanced the supplies that raised the crop, and in reason, in justice, in equity, and at law the cotton was Chandler's, and the court did right and the judgment ought to stand.

OPINION.—COOPER, J., delivered the opinion of the court.

All the evidence in relation to satisfaction of the deed of trust, upon the existence of which the plaintiff's right to recover depends, tends to show payment of the entire debt and a consequent discharge of the incumbrance.

Mr. and Mrs. Cameron owed Lake nothing at the time of the execution of note which was given as the representative of a debt to be thereafter incurred and which was to arise from advances to be made by Lake. Lake made no advances whatever, all were made by Lake & Marshall, but under an agreement between the members of the firm that the debt was to be owned by Lake alone. Something over $750 was advanced instead of the sum originally agreed on ($400), eight bales of cotton, a part of the mortgaged property, were shipped to Lake & Marshall, and sold by them, and the proceeds credited on the account. The account was the whole and only debt due or contracted. Disconnected from the account, the note had no validity because nothing would be due on it. The account, to the amount of the note, and the note itself represented one and the same debt. The appropriation of the proceeds of the cotton to the account operated *ipso facto* as payment of the first items thereof, and these items composed the debt represented by the note. Payment of these was payment of the note.

The appropriation made by the creditors was the same which the law have made in the absence of one of the parties. The appropriation of the payment having been made, and the mortgage debt to that extent extinguished, it was not within the power of Mr. Cameron, if he had desired and intended so to do, to direct it to be withdrawn and appropriated to the last items of the account without the approval of Mrs. Cameron, who was the owner of the mortgaged property and the real debtor. This is conclusive of the case without regard to any of the other questions presented.

The judgment is *affirmed.*